## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE CIRO VELASQUEZ-ORTEGA, **)**<br>263 Marcy Avenue **)**<br>Brooklyn, NY 11211 **)**<br> **)**<br> **)**<br>Plaintiff, **)**<br> **)**<br>v. **)**<br> **)**<br>MICHAEL CHERTOFF **)**<br>Secretary of the U.S. Department **)**<br>of Homeland Security **)**<br>U.S. Department of Homeland Security **)**<br>3801 Nebraska Avenue, NW **)**<br> Washington, DC 20528 **)**<br> **)**<br>EMILIO T. GONZALEZ **)**<br>Director, U.S. Citizenship and Immigration **)**<br>Services **)**<br>20 Massachusetts Avenue, NW **)**<br>Washington, DC 20529 **)**<br> **)**<br>GERARD HEINAUER **)**<br>Director, Nebraska Service Center **)**<br>U.S. Citizenship and Immigration Services **)**<br>Omaha District Office **)**<br>1717 Avenue H **)**<br>Omaha, NE 68110-2752 **)**<br> **)**<br>and **)**<br> **)**<br>MARY ANN GANTNER **)**<br>District Director **)**<br>New York City District Office **)**<br>U.S. Citizenship and Immigration Services **)**<br>New York District Office **)**<br>26 Federal Plaza **)**<br>New York, NY 10278 **)**<br> **)**<br>Defendants. **)** | Civil Action No. _____ |

## COMPLAINT FOR MANDAMUS, INJUNCTIVE, AND DECLARATORY RELIEF

## NATURE OF THE ACTION

1.    This is a suit to compel the U.S. Citizenship and Immigration bureau ("USCIS") to comply with 8 U.S.C. § 1159(b) and agency regulations by adjudicating the application of Jose Ciro Velasquez-Ortega to become a lawful permanent resident – a green card holder – of the United States. Velasquez applied for adjustment of status more than eight years ago. All reasonable deadlines to act on his application have passed. Recent applicants face waits of only six months to get their green cards. For more than two years, his attorney has been contacting government officials in an effort to determine what has become of his application, without success. The Government's failure to act on his application within a reasonable period of time violates his right to a decision and breaches the Government's duty to act on his application.

## JURISDICTION AND VENUE

2.    This action arises under the Mandamus Act, 28 U.S.C. § 1361 and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1). This Court has jurisdiction under 28 U.S.C. § 1361 (mandamus) and 28 U.S.C. § 1331 (federal question) and may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because defendants Secretary of the U.S. Department of Homeland Security and Director of USCIS officially reside in the District of Columbia.

## PARTIES

4.    Plaintiff Jose Ciro Velasquez-Ortega, A 28 422 366, is a Honduran citizen residing in New York who applied to become a lawful permanent resident of the United States after he was granted asylum in the United States.

5.    Defendant Michael Chertoff is Secretary of the U.S. Department of Homeland Security. USCIS is a bureau of the U.S. Department of Homeland Security.

6.      Emilio T. Gonzalez is Director of U.S. Citizenship and Immigration Services.  USCIS adjudicates applications of aliens to adjust their legal status to lawful permanent residents of the United States.

7.      Gerard Heinauer is Acting Director of the Nebraska Service Center of U.S. Citizenship and Immigration Services.  USCIS's Nebraska Service Center processes adjustment of status applications of aliens who have been granted political asylum in the United States.

8.      Mary Ann Gantner is District Director of the New York City District Office of U.S. Citizenship and Immigration Services.  USCIS's New York City District Office interviewed plaintiff Velasquez to determine his eligibility to become a lawful permanent resident of the United States.

## FACTUAL BACKGROUND

9.      Velasquez filed his green card application more than eight years ago.  Over two years ago, asylees who applied at the same time as Velasquez began to receive their green cards.  After making an inquiry on his behalf, a Congressperson's office was informed by USCIS that action on his application would be taken at the end of 2003.  Nothing happened.  Velasquez's attorney repeatedly requested action from the Government, without success.  During the last two years, Velasquez's file has traveled between immigration offices in New York, Nebraska, and Virginia, sometimes for no apparent reason.  The Government has never asserted that Velasquez's application is unripe for adjudication.

10.     The Immigration and Nationality Act provides that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter [including asylee adjustment] and all other laws relating to the immigration and naturalization of aliens."  8 U.S.C. § 1103 (a)(1).

3

11.    Regulations require that Velasquez "shall be notified of [USCIS's] decision, and if the application is denied, of the reasons for denial." 8 C.F.R. § 209.2(f).

12.    Velasquez entered the United States without inspection on October 10, 1988.    On December 23, 1996 he was granted political asylum by an Immigration Judge in New York City. The Government filed a Notice of Appeal on January 21, 1997, of the Immigration Judge's grant of political asylum but thereafter did not file a brief.    The Board of Immigration Appeals summarily dismissed the Government's appeal on December 5, 1997.

13.    As a political asylee, Velasquez is entitled to apply to adjust his status from political asylee to lawful permanent resident of the United States after one year of physical presence in the United States and after meeting other statutory prerequisites. 8 U.S.C. § 1159(b).

14.    Meeting all statutory eligibility requirements, Velasquez applied for adjustment of status in February 1998.

15.    More than six years ago, on November 4, 1999, Velasquez was interviewed at the New York District Office of the then-Immigration and Naturalization Service (whose adjustment authority was later transferred to USICS) to determine his eligibility to become a green card holder. The interviewer did not identify any problems with his application or request any further information from Velasquez.

16.    In September 2003, the office of the Hon. Nydia Velazquez – the Congressperson representing Velasquez's district – made an inquiry on Velasquez's behalf.    The USCIS Nebraska Service Center, a nationwide center established to process asylee adjustment applications, represented that action would be taken on Velasquez's application within the next two months.  That assurance proved incorrect; no action was taken.

4

17.     By the end of 2003, Velasquez's immigration attorney began to inquire into the status of his application after noticing that asylees who had applied after Velasquez were receiving approval of their green card applications.

18.     Instead of being adjudicated, Velasquez's application was then mistakenly transferred in April 2004 from Nebraska to the USCIS asylum office in Arlington, Virginia. Velasquez did not live within the area serviced by that office and had already been granted political asylum. A supervisor there later informed Velasquez's attorney that the transfer was in error and stated that on May 27, 2004 his file was rerouted to the New York City District Office, where Velasquez had been interviewed. In May 2004, Velasquez's attorney spoke to a representative of USCIS's General Counsel's office in Washington, D.C. who confirmed that Velasquez's file had been sent to the New York City District Office.

19.     To try to discover why Velasquez's application was sent back to New York, in June 2004 his attorney spoke to Philip Costa, an Assistant District Counsel at the New York District Office. Mr. Costa stated that officials in the New York office of U.S. Immigration and Customs Enforcement (an enforcement agency established in the reorganization of immigration authority under the new Department of Homeland Security) had been asked to review Velasquez's application and had not identified any reason why it could not be adjudicated. Thereafter, a USCIS attorney in the New York District Office stated that Velasquez's file had been returned to the USCIS Nebraska Service Center with a notation indicating that attorneys in the New York District Office saw no problem with his application being adjudicated.

20.     Subsequently, a June 2004 reply from the USCIS Nebraska Service Center liaison stated that Velasquez's file was still in the New York District Office. Velasquez's attorney had made inquiries with the USCIS Nebraska Service Center through the designated liaison of the

American Immigration Lawyers Association (AILA), established to channel requests for information as a result of past difficulties in obtaining information on the status of asylee adjustment applications processed at the USCIS Nebraska Service Center.

21.     As Velasquez's delay increased, the overall pace of asylee adjustments paradoxically accelerated, further pressing the question of why his application could not be decided. On May 11, 2005, Congress removed an annual statutory cap of 10,000 asylee adjustments that had previously slowed processing. Pub. L. 109-13, Div. B, § 101(g)(1)(B)(i), 119 Stat. 231, 305 (2005). On July 12, 2005, settlement of a class-action lawsuit further increased the rate of processing by requiring an additional allotment of 31,000 asylee adjustments over the next three fiscal years. *See Ngwanyia v. Gonzales*, 376 F. Supp. 2d 923, 927 (D. Minn. 2005).

22.     As a result of the *Ngwanyia* settlement, a special e-mail address was established to receive inquiries regarding the processing of asylee adjustment applications. Velasquez's attorney made e-mail inquires to this address on July 5, 2005, July 29, 2005, and September 24, 2005. The *Ngwanyia* settlement requires USCIS to take "immediate steps to resolve any problems" identified by these inquiries. *Ngwanyia v. Gonzales*, No. Civ. 02502 (RHK/AJB) (D. Minn. 2005) Settlement Agreement ¶ 24. No reply was received to any of these e-mail inquiries.

23.     Because no response was forthcoming, Velasquez's attorney asked class counsel in *Ngwanyia* to inquire on Velasquez's behalf. A December 2005 e-mail response from USCIS in Washington D.C. to one such request stated "there is not much that can be disclosed about the processing of the case[] except to say that [it is] being processed."

24.     On February 14, 2006, during a meeting with non-governmental organizations, the USCIS announced that it had moved up the processing of older asylee adjustment applications and was now adjudicating those filed on November 1, 2000 – a filing date more than two and

half year after Velasquez's. At the same meeting, the USCIS projected only a six month delay in adjudicating newly filed applications. One attorney reported less than a month's wait to adjudicate one recently filed application.

25. In March 2006, the USCIS informed the AILA liaison that Velasquez's application was not at the USCIS Nebraska Service Center after all – as had previously been thought – and that no other information was available at that time.

26. On March 31, 2006, Velasquez wrote to defendants explaining that, despite years of requests to adjudicate his application, he had still not received a decision. Velasquez included with the letter a draft of this complaint and indicated that if the parties could not reach a resolution of the matter within 30 days, Velasquez intended to file his complaint in federal district court to compel adjudication of his application. Defendants did not respond to the letter.

27. On May 18, 2006, Velasquez wrote to Madelyn E. Johnson, Deputy Chief of the Civil Division of the United States Attorney's Office for the District of Columbia, explaining that adjudication of his application had been improperly delayed. Velasquez included a copy of his March 31, 2006 letter to defendants and a draft of this complaint and stated that Velasquez intended to file his complaint in the United States District Court for the District of Columbia within 30 days if the matter could not be resolved. Ms. Johnson did not respond to the letter.

28. On June 26, 2006, counsel for Velasquez telephoned Ms. Johnson to discuss the matter. She responded that she would look into it before the end of the week. Counsel for Velasquez has received no further response from Ms. Johnson.

29. In sum, after more than eight years, Velasquez still knows nothing more than he did on the day he applied for his green card. All reasonable deadlines having passed. He faces a future

wait of indeterminate length. He is not even certain what USCIS office currently has his application.

## FIRST CLAIM: FOR RELIEF UNDER THE MANDAMUS ACT

30.    Plaintiff incorporates the allegations of paragraphs 1 through 29 above.

31.    The Mandamus Act provides the Court with authority "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Velasquez has a right to have his adjustment of status application adjudicated forthwith and USCIS has a corresponding duty to adjudicate his application without further delay. Years of fruitless requests by Velasquez's attorney demonstrate that no other adequate remedy remains except to sue to adjudicate Velasquez's application. Defendants violate the Mandamus Act by refusing to render their decision.

## SECOND CLAIM: FOR RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT

32.    Plaintiff incorporates the allegations of paragraphs 1 through 31 above.

33.    The Administrative Procedure Act ("APA") provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further provides that the federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Defendants have provided no explanation why Velasquez's application cannot be decided immediately and have given no reason to believe that it is making a good faith effort to adjudicate his application within a reasonable time. Further delay withholds from Velasquez the benefits of permanent residency. Defendants violate the APA by refusing to render their decision.

## THIRD CLAIM: FOR RELIEF UNDER THE DECLARATORY JUDGMENT ACT

34.    Plaintiffs incorporate the allegations of paragraphs 1 through 33 above.

8

35.    The Declaratory Judgment Act provides that, for a case within the Court's jurisdiction, it "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).    The unreasonable delay in adjudicating Velasquez's application to adjust his status to a lawful permanent resident of the United States is unlawful.

REQUESTS FOR RELIEF

Wherefore, the plaintiff prays for the following relief:

(a) a declaratory judgment that defendants have unlawfully delayed adjudication of Velasquez's application to become a lawful permanent resident of the United States;

(b) a writ of mandamus compelling defendants to adjudicate Velasquez's application to become a lawful permanent resident of the United States within the next 30 days;

(c) in the alternative to the relief requested in subparagraph (b), an injunction prohibiting a delay of more than 30 additional days to adjudicate Velasquez's application to become a lawful permanent resident of the United States;

(d) costs and attorney fees as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(e) such other and further relief as the Court may deem proper.

DATED:    _July 7, 2006_

By: _Andrew J Morris_
Andrew J. Morris (D.C. Bar No. 411865)
Timothy C. Lambert*(D.C. Bar No. 475798)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 263-3000
Fax: (202) 263-3300
Attorneys for Plaintiff

*Application pending for admission to the bar of the United States District Court for the District of Columbia